# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| OTIS E. HOWARD,<br>    Plaintiff,<br><br>       v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br>    Defendant. | )<br>)<br>)<br>)    CAUSE NO.: 2:13-CV-376-JEM<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Otis E. Howard on October 17, 2013, and a Social Security Opening Brief of Plaintiff [DE 19], filed by Plaintiff on April 24, 2014. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On August 11, 2014, the Commissioner filed a response, and on August 26, 2014, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On July 8, 2011, Plaintiff filed an application for disability insurance benefits ("DIB") and for supplemental security income ("SSI") with the U.S. Social Security Administration ("SSA") alleging that he became disabled on July 7, 2010. Plaintiff's application was denied initially and upon reconsideration. On January 22, 2013, Administrative Law Judge ("ALJ") Edward P. Studzinski held a hearing at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On March 22, 2013, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant met the insured status requirements of the Social Security Act through March 31, 2012.

2. The claimant has not engaged in substantial gainful activity since March 9, 2011, the application date. (20 CFR 404.1571 *et seq*. and 20 CFR 416.971 *et seq*.).

3. Since the alleged onset date, the claimant had severe impairments: borderline intellectual functioning (BIF); diabetes mellitus; obesity and degenerative disc disease of the lumbar spine (20 CFR 404.1520(c) and 20 CFR 416.920(c)).

4. Since the alleged onset date, the claimant has not had an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 20 CFR 404.1525, 20 CFR 404.1526, 20 CFR 416.920(d), 416.925 and 416.926).

5. Prior to November 1, 2012, the date on which the claimant because disabled, he had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), as he could lift and/or carry 20 pounds occasionally and 10 pounds frequently, and had no limitations in his ability to sit, stand, and/or walk. The claimant could assume any one position for no more than 60 minutes before needing to alternate positions for 5 minutes at a time. The claimant could only occasionally operate foot controls. The claimant could never climb ladders, ropes or scaffolds and could occasionally climb ramps and stairs, as well as balance, stoop, crouch, kneel, and crawl. The claimant could frequently, but not constantly, use his hands for fine or gross manipulation, and could not use his hands for forceful, repetitive grasping or torqueing maneuvers. The claimant could not work around unprotected heights, large bodies of water, unexposed flames, or hazardous unguarded machinery. The claimant could not drive. The claimant was limited to simple, routine and repetitive tasks, simple decision-making, occasional and minor changes in the work setting, and tasks requiring no more than the exercise of simple judgment.

6. Beginning on November 1, 2012, the claimant had the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 20 CFR 416.967(a).

7. Since July 7, 2010, the claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 20 CFR 416.965).

8. Prior to the established disability onset date, the claimant was an individual closely approaching advanced age (20 CFR 404.1563 and 20 CFR 416.963).

9. The claimant has limited education and is able to communicate in English (20 CFR 404.1564 and 20 CFR 416.964).

10. Prior to November 1, 2012, transferability of job skills is not material to the determination of disability because the claimant was "not disabled" whether or not he had transferable job skills. Beginning on November 1, 2012, the claimant has not been able to transfer job skills to other occupations (SSR 82-41 and 20 CFR Part 404, Supbart P, Appendix 2).

11. Prior to November 1, 2012, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

12. Beginning on November 1, 2012, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

13. The claimant was not disabled prior to November 1, 2012, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

14. The claimant was not under a disability within the meaning of the Social Security Act at any time through March 31, 2012, the date last insured (20 CFR 404.315(a) and 404.320(b)).

On September 4, 2013, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

# FACTS

Since at least July 6, 2010, Plaintiff has suffered from uncontrolled diabetes mellitus, dysuria, hypertension, renal insufficiency, diabeti neuropathy, and hypercholesterolemia. On August 10, 2011, Plaintiff went to the emergency room with complaints of back pain. He had decreased range of motion and x-rays showed degenerative disc disease and facet hypertrophic disease throughout the lumbar spine.

Plaintiff first sought treatment from Dr. Monterubianesi for his diabetes in April 2011. On March 9, 2012, she ordered a CT scan which revealed degenerative disc disease, osteopenic changes, moderate central stenosis and bilateral foraminal stenosis at several levels, severe facet hypertrophic disease, early lateral recess narrowing, and disc protrusion. Dr. Monterubianesi opined that Plaintiff was only able to "walk 2 blocks before having to stop due to pain, can't carry more than 15 lbs at a time, [and] can't climb a full flight of stairs." On a visit with Dr. Monterubianesi on November 12, 2013, Plaintiff told her that he had not been making appointments with her because of lack of funds. He reported falling, and Dr. Monterubianesi recommended a neurosurgery consult. Her exam revealed numbness, decreased range of motion in his lumbar spine, antalgic gait, and a positive straight-leg test. On January 16, 2013, Dr. Monterubianesi completed a physical residual functional capacity assessment indicating that Plaintiff experienced significant postural, environmental, exertional, and manipulative limitations.

On September 8, 2009, Plaintiff had a psychological examination. The examining psychologists found mild impairments in some areas of cognition, including working memory and calculations, mild limitations in mood/affect and communication. They found that Plaintiff had an IQ of 78, indicating borderline intellectual functioning and reading and arithmetic abilities at the

elementary school level. They also diagnosed an adjustment disorder with mixed anxiety and depressed mood. There is no other mental health treatment or assessment in the record.

Plaintiff testified that he tried to do temporary assembly line work in 2011, but the employer stopped calling him to work because it was hard for him to keep up with the assembly line. He dropped items and was in a lot of pain from trying to bend over.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618

5

(7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A),

6

1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC

should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff argues that the ALJ erred in determining Plaintiff's disability onset date and that the ALJ's RFC finding was flawed. The Commissioner argues that the ALJ's findings are supported by substantial evidence.

When determining a claimant's disability onset date, an "ALJ is to consider: (1) the claimant's allegations as to the onset date; (2) the date that the claimant left work; and (3) medical evidence of onset. Medical evidence is the most important factor, and the chosen onset date must be consistent with it." *Henderson v. Apfel*, 179 F.3d 507, 513 (7th Cir. 1999) (citing SSR 83-20, 1983 WL 31249 (1983); *Nolen v. Sullivan*, 939 F.2d 516, 519 (7th Cir. 1991); *Lichter v. Bowen*, 814 F.2d 430, 434 (7th Cir. 1987)). In cases where impairments get progressively worse, "it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling" and "[i]n such cases, it will be necessary to infer the onset date from the medical and other evidence." SSR 83-20 at *2. The claimant's alleged onset date of disability "should be the starting point of the analysis, and that date 'should be used if it is consistent with all the evidence available.'" *Briscoe*, 425 F.3d at 353 (citing SSR 83-20 at *3). While the day the claimant stopped working because of the impairment is relevant, "the medical evidence is 'the primary element in the onset determination,' and the date chosen 'can never be inconsistent with the medical evidence of record.'" *Id.* (quoting SSR 83-20 at *2, *3). Accordingly, an ALJ should "consult a medical advisor

8

in situations involving incomplete medical histories where an onset date must be inferred." *Henderson*, 179 F.3d at 513 (citing *Pugh v. Bowen*, 870 F.2d 1271, 1278 n.9 (7th Cir. 1989); *see also Briscoe*, 425 F.3d at 353 ("In such cases, the ALJ must 'infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process' and should seek the assistance of a medical expert to make this inference.") (quoting SSR 83-20 at *2). In a case where, as here, the Plaintiff challenges the ALJ's selected onset date, "the issue is whether there is substantial evidence in the record to support the date chosen by [the ALJ], not whether an earlier date could have been supported." *Henderson*, 179 F.3d at 512 (quoting *Stein v. Sullivan*, 892 F.2d 43, 46 (7th Cir. 1989)); *see also Creasy v. Barnhart*, 30 F. App'x. 620, 624 (7th Cir. 2002).

In this case, Plaintiff was unable to keep a temporary job in 2011 because of his physical limitations, making his last employment in 2008. He claimed an onset date of July 7, 2010. The ALJ determined that Plaintiff's onset date was November 1, 2012. He based the onset date on a visit with Dr. Monterubianesi on November 13, 2012, at which Plaintiff had a positive straight leg test and an antalgic gait and reported falls, and the fact that Plaintiff testified that he was prescribed his cane in November 2012. He found Plaintiff's allegations generally credible after that date, but that the record was "[l]acking sufficient support" to establish an earlier disability date.

Plaintiff argues that the ALJ did not follow the requirements for determining an onset date and chose the date based not on a reasoned determination of disability but on the sparsity of medical records in the record. The ALJ chose as an onset date a doctor's visit at which Plaintiff's symptoms were bad enough to support disability, without considering that they may have been disabling prior to the date on which he was able to obtain that medical treatment. *See Briscoe*, 425 F.3d at 353 ("If the ALJ based his RFC determination on this first date of diagnosis, it is contrary to SSR 83-20

9

which holds that 'in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e. be decided on medical grounds alone) before onset can be established.'") (quoting SSR 83-20, 1983 WL 31249, at *2); *see also Lichter,* 814 F.2d at 436 (finding error and failure to properly apply SSR 83-10 when ALJ relied on first medical report of functional limitations despite indications that the limitations predated the physician visit).

Plaintiff points to evidence indicating that his impairments were severe before November 2012. Plaintiff's falls began at least a month prior to his November appointment, and his need for a cane presumably also predated that date or he would not have requested its prescription. Plaintiff also emphasizes a CT scan performed on March 9, 2012. It revealed degenerative disc disease, osteopenic changes, moderate central stenosis and bilateral foraminal stenosis at several levels, severe facet hpertrophic disease, early lateral recess narrowing, and disc protrusion. On that day, Dr. Monterubianesi, Plaintiff's treating physician, opined that he could only "walk 2 blocks before having to stop due to pain, can't carry more than 15 lbs at a time, can't climb a full flight of stairs." AR 414. The ALJ disregarded or found less than credible both the evidence and Plaintiff's testimony about his limitations prior to November 2012.

### A. Treating Physician

In particular, the ALJ gave little weight to treating physician Dr. Monterubianesi's March 9, 2012, statement describing Plaintiff's limitations and to the medical source statement she completed in January 2013. "A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Being "not

10

inconsistent" does not require that opinion be supported directly by all of the other evidence "as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." SSR 96-2p, 1996 WL 374188, at *3 (July 2, 1996). To be "substantial," conflicting evidence "need only be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Schmidt v. Barnhart*, 395 F.3d at 744. Furthermore, an ALJ must specifically address opinions that address a plaintiff's ability to work, and "evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." SSR 96-5p, 1996 WL 374183, at *3, *5 (July 2, 1996); *see also Hamilton v. Colvin*, 525 F. App'x 433, 438-39 (7th Cir. 2013) (remanding in part for failure to address conflict between the RFC and physicians' opinions about the plaintiff's capacity) ("While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting SSR 96–5p) (citing 20 C.F.R. § 416.927(e)(2)); *Roddy*, 705 F.3d at 636 ("Even though the ALJ was not required to give [the treating physician]'s opinion [that the claimant could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it.").

The ALJ concluded that despite the fact that Dr. Monterubianesi was Plaintiff's treating physician and specifically opined as to Plaintiff's limitations prior to November 2012, her opinions were entitled to little weight as "inconsistent with the record and her own treating notes." He specifically identified two treatment notes from 2011 that he said undermined her later opinion statements. In April 2011, Dr. Monterubianesi first treated Plaintiff for his diabetes. She encouraged him to exercise and noted that he was able to climb stairs and walk as much as he wanted. Dr. Monterubianesi saw him for a follow-up visit for diabetes treatment in August 2011,

11

and again indicated that Plaintiff needed to exercise. The ALJ emphasizes that the notes from these visits indicate negative muscoloskeletal exams, and that a consultative examination in August 2011 also indicated that Plaintiff had normal gait. Although these exams indicate normal range of motion and the ability to walk at least a minimal distance in 2011, the ALJ does not explain how these brief notes from appointments addressing Plaintiff's diabetes are substantial evidence that contradict Dr. Monterubianesi's later opinions specifically addressing Plaintiff's degenerative disc disease, particularly when her visit notes even in November 2012 continue to include a recommendation that Plaintiff exercise. Although he mentions the treatment earlier in his opinion, the ALJ also does not explain how Dr. Monterubianesi's opinions are inconsistent with other medical records from as early as August 10, 2011, that contain diagnoses of osteoarthritis and degenerative disc disease. On that date, Plaintiff went to the emergency room with severe back pain and had decreased range of motion in his back. An x-ray revealed straightening of the lumbar lordosis with degenerative disc disease, facet hypertrophic disease, and early anterior wedging at T12 and L1.

Especially given the degenerative nature of Plaintiff's disease, the ALJ failed to explain how Dr. Monterubianesi's multiple reports of Plaintiff's limitations are contradicted by substantial evidence. Furthermore, there is no medical evidence indicating Plaintiff's onset date, and the ALJ did not attempt to obtain any new medical opinion evidence regarding the onset date. Instead, as described above, the ALJ determined that Plaintiff was definitely disabled before his November 13, 2012, appointment, but cited to a lack of evidentiary support in the record prior to that date as keeping him from choosing an earlier onset date. The choice of November 1, 2012, as the onset date is not properly supported by objective medical evidence, violating the prohibition against ALJs "mak[ing] their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.

1996); *see also Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003). The ALJ should have obtained medical testimony regarding the disability onset date. *See, e.g., Pierce v. Astrue*, No. 11 C 447, 2012 WL 503873, at *11, 2012 U.S. Dist. LEXIS 17979, at *30 (N.D. Ill. Feb. 14, 2012) ("The Court acknowledges that the ALJ's selection of the . . . onset date was not unreasonable from the perspective of a layperson. However, making that inference was simply outside of her province. No objective medical evidence clarifies the actual date when Claimant's hand impairment . . . became disabling and therefore, the ALJ was required to seek input from a doctor on this crucial issue."); *Brothers v. Astrue*, No. 06 C 7088, 2011 WL 2446323, at *10, 2011 U.S. Dist. LEXIS 63848, at *26-27 (N.D. Ill. June 13, 2011) ("The court must conclude that the ALJ's determination of an onset date is not supported by substantial evidence" where "there is no evidence to support the ALJ's chosen onset date. Simply put, nothing happened on [the selected date]. The ALJ did not provide any explanation as to why that was her best guess. . . . Instead, that date appears to have been chosen because the ALJ believed that [the plaintiff] had become disabled at some point in between" the dates of two evaluations.). Accordingly, on remand, the ALJ is directed to obtain medical expert testimony regarding the course of Plaintiff's degenerative disc disease and diabetes and when the combined symptoms became disabling, including contacting Plaintiff's treating physicians for clarification of the course of his disease as needed.

Although medical evidence "may be discounted if it is internally inconsistent or inconsistent with other evidence," *Knight*, 55 F.3d at 314 (citing 20 C.F.R. § 404.1527(c)) (other citations omitted), the ALJ "must provide a 'logical bridge' between the evidence and his conclusions." *O'Connor-Spinner*, 627 F.3d at 618. In this case, the ALJ failed to give controlling weight to the

treating physician's opinion regarding the limitations caused by Plaintiff's impairments without explaining how his opinion was inconsistent with a record demonstrating degenerative disease and failed to either identify other medical opinions to which he gave greater weight or obtain additional information to determine when Plaintiff's physical ailments becoming disabling.

The ALJ also failed to identify sufficient evidence on which to based his conclusion regarding Plaintiff's mental RFC. He barely addressed Plaintiff's mental limitations in his RFC. The ALJ wrote that "there is no opinion evidence in the file" regarding Plaintiff's job-related abilities and concluded that Plaintiff did not require any limitations other than to simple tasks and decision-making because at his psychological exam, performed prior to his claimed onset date, Plaintiff "recalled all three objects after five minutes, . . . had only a mild impairment in certain aspects of his cognition and that he could sustain attention for extended periods of time." AR 27. He did not include the parts of the report that indicated adjustment disorder, mixed anxiety, depressed mood, or that the areas of cognition that were mildly impaired included Plaintiff's working memory, calculations, and communication. The ALJ did not provide sufficient support for his conclusions about Plaintiff's mental health. On remand, in addition to obtaining medical expert testimony regarding the onset date of Plaintiff's physical impairments, the ALJ is also directed to obtain additional expert opinions regarding the Plaintiff's mental health limitations.

Furthermore, the ALJ failed to explain how he considered the limitations caused by Plaintiff's combination of impairments. "Although [] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir.

2009); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might well be totally disabling."); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe.") (citing 20 C.F.R. § 404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)). The ALJ failed to consider Plaintiff's mental health limitations and obesity in combination with his other impairments and failed to consider how the combination affected Plaintiff's disability onset date. "Social Security Ruling 02-1p requires an ALJ to consider the exacerbating effects of a claimant's obesity on her underlying conditions (even if the obesity is not itself a severe impairment) when arriving at a claimant's RFC," *Hernandez v. Astrue*, 277 F. App'x 617, 623-24 (7th Cir. 2008) (citing SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002)) (other citations omitted), and the Court notes that in this case the ALJ concluded that Plaintiff's obesity *was* a severe impairment, making the determination even more important. *See also Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) (finding that, even if obesity is not a severe impairment itself and "merely aggravates a disability caused by something else[,] it still must be considered for its incremental effect on the disability"). On remand, the ALJ is directed to consider the combination of Plaintiff's impairments, even those that are not severe in isolation, and to specifically address the impact her obesity and her mental health problems have on her ability to perform work.

**B.  Credibility**

The ALJ also indicated that he found Plaintiff less than credible about his limitations prior to November, 2012, for several reasons that are concerning to the Court. The ALJ notes that Plaintiff goes to the store and the park on a daily basis, but does not explain how those meager

15

outings are inconsistent with disability, particularly since Plaintiff reports that he is homeless and living in his car.

The ALJ also found Plaintiff less than credible because he was not compliant with treatment before 2012, but he did not address Plaintiff's reasons for non-compliance, despite Plaintiff's testimony that he could not afford to pay for medication and the indications in the record that he did not have adequate health insurance. *See* SSR 96-7p, 1996 WL 374186 at *7 (July 2, 1996); *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure [to follow a treatment plan] unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p).

In addition, the ALJ appears to have completely disregarded any possibility that Plaintiff may have been disabled during 2010 because Plaintiff received unemployment benefits during the last two quarters of that year. Although "It is not inappropriate to consider a claimant's unemployment income in a credibility determination," *Miocic v. Astrue*, 890 F. Supp. 2d 1046, 1059 (N.D. Ill. 2012) (citing *Schmidt v. Barnhart*, 395 F.3d at 745-46), it is error to find a claimant unreliable simply because of their receipt of unemployment benefits. *Richards v. Astrue*, 370 F. App'x 727, 732 (7th Cir. 2010). "A desperate person might force herself to work – or in this case, certify that she is able to work – but that does not necessarily mean she is not disabled." *Richards* at 732 (citing *Gentle*, 430 F.3d at 867; *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir.2003)). In this case, unlike in *Richards*, the ALJ did not even ask

16

Plaintiff about why he sought unemployment benefits, and the Court is concerned that Plaintiff may not have realized that he was submitting paperwork that included a representation of ability to work or may not have understood the implications of that statement on his attempt to obtain disability benefits, particularly given his mental limitations as reflected in the record.

This case is being remanded for a new determination of Plaintiff's disability onset date, including considering all the medical evidence of record, addressing Plaintiff's impairments in combination, obtaining additional medical and mental health evidence as needed, and properly assessing Plaintiff's credibility in accordance with the applicable law. Because of the above errors in this case and several comments in the record suggesting that the ALJ considered the date of Plaintiff's insurance in choosing an onset date rather than basing it on Plaintiff's actual limitations, the Court also recommends that a new ALJ be assigned to Plaintiff's case.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in the Social Security Opening Brief of Plaintiff [DE 19] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 18th day of March, 2015.

        s/ John E. Martin  
        MAGISTRATE JUDGE JOHN E. MARTIN  
        UNITED STATES DISTRICT COURT

cc:    All counsel of record